CARLSMITH BALL LLP

J. PATRICK MASON
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
A.W. Chesterton Company



FILED
DISTRICT COURT OF GUAM
JAN 10 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| CESS NAVARRO OLMO and RONNIE PASCUAL FERRERAS,<br><br>Plaintiffs,<br><br>vs.<br><br>A.P. GREEN INDUSTRIES, INC., A.P. GREEN SERVICES, INC., A.W. CHESTERTON COMPANY, AMCHEM PRODUCTS, INC., ARMSTRONG WORLD INDUSTRIES, INC., ASBESTOS CLAIMS MANAGEMENT CORPORATION, BABCOCK & WILCOX COMPANY, COMBUSTION ENGINEERING, INC., DOW CHEMICAL COMPANY, DRESSER INDUSTRIES, INC., FELITALLIC, INC., FLINTKOTE COMPANY, FOSTER WHEELER CORP., GAF CORPORATION, GARLOCK, INC., GEORGIA-PACIFIC CORPORATION, HARBISON-WALKER REFRACTORIES CO., HONEYWELL INTERNATIONAL, INC., JOHN CRANE, INC., KAISER GYPSUM COMPANY, INC., METROPOLITAN LIFE INSURANCE COMPANY, OWENS CORNING, OWENS-ILLINOIS, INC., PITTSBURG CORNING CORPORATION, QUIGLEY COMPANY, INC., UNITED STATES GYPSUM COMPANY, and VIACOM, INC.,<br><br>Defendants. | CIVIL CASE NO. CV05-00025<br><br>**DEFENDANT A.W. CHESTERTON COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS; DECLARATION OF SERVICE** |

ORIGINAL

2.

## I. **PERSONAL JURISDICTION**

Defendant A.W. Chesterton Company ("Chesterton") submits this reply to Plaintiffs' Opposition to Chesterton's Motion to Dismiss the First Amended Complaint.

In their Opposition Brief, Plaintiffs argue that the Court has limited or special jurisdiction over the defendants that have filed Motions to Dismiss for Lack of Personal Jurisdiction. In making their argument, Plaintiffs rely on Abuan v. General Electric Co, 735 F.Supp. 1479 (D. Ct. Guam 1990).

Due process protects a Defendant's liberty interest in not being subject to the binding judgments of a forum in which he has established no meaningful contacts, ties or relations. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995), citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72. As was pointed out in Chesterton's opening brief, the Ninth Circuit has established a three-part test for establishing specific jurisdiction: (1) a defendant must purposefully avail itself of the forum; (2) the claim must arise out of or result from the defendant's forum related activities; (3) the exercise of jurisdiction must be reasonable. Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1188-9 (9th Cir. 2001).

In applying the Ninth Circuit test, there are key facts that distinguish the Abuan case relied upon by Plaintiffs from the case now before this Court. Unlike the present case, in Abuan, the manufacturer purposefully availed itself of the Guam market and the claim arose out of a Guam related activity.

In Abuan, General Electric ("GE") manufactured transformers. Defendant Monsanto sold Polychlorinated Biphenyls ("PBCs") to GE. GE used the PBCs purchased from Monsanto in a dielectric solution used to insulate transformers. GE transformers containing the PBCs were sold to the Navy and delivered to the Navy at Guam. Hence, the manufacturer of the

2.

transformers containing the PBCs sold the transformers for delivery and use on Guam. Guam was the intended destination of the transformers when they were sold. Therefore, the manufacturer of the transformers was availing itself of the Guam market by shipping the transformers to Guam for use by the Navy on Guam.

Unlike the Abuan case, in the present case, there is no allegation that asbestos containing products were sold for delivery and use on Guam. It was fortuitous that any such products reached Guam. Plaintiffs allege, in essence, that asbestos products were used on ships going between the Philippines and Guam, that Plaintiffs worked on those ships, that Plaintiffs were assigned the duty of removing and replacing piping and insulation in the ships, that the piping and insulation contained asbestos, and that Plaintiffs inhaled asbestos dust and fibers from the piping and insulation. Complaint at ¶s 9 & 10. Hence, the asbestos products came to Guam because the Navy ships containing the products stopped on Guam. The products were not being transported to Guam for delivery and use on Guam pursuant to a sale by the manufacturer or distributor. Thus, those who manufactured the asbestos products were not taking advantage of the Guam market and were not purposefully availing themselves of the Guam market.

Another key fact that distinguishes Abuan from the present case is the place of the injury. In Abuan, the plaintiffs were present at the Piti Power Plant on Guam when a transformer ruptured emitting PBCs. This emission of PBCs caused the alleged injuries to the plaintiffs. A specific incident that caused injury occurred on Guam. Therefore, in the Abuan case, there is a clear connection between the forum related activity (delivering transformers to Guam) and the incident causing the injury (the explosion of one of the transformers delivered to Guam).

In the present case, Plaintiffs allege that between 1966 and 1992, they worked on ships where asbestos products were used and the ships traveled between the Philippines and Guam. *Id.*

3.

¶ 9. Hence, there was no specific event causing injury that occurred on Guam. This is very different than the Abuan case. In Abuan, the defendant profited from the Guam market by making a component of a product that was shipped to Guam for use on Guam. And the product exploded on Guam causing injury to the plaintiffs. Consequently, in Abuan, there is some basis for saying that the defendant purposely availed itself of the forum and that the claim arose out of a forum related activity when the transformer exploded on Guam.

In addition to the above distinctions between the present case and Abuan, there is a questions whether the Ninth Circuit precedent upon which the Abuan case is based is still good law. In their brief, Plaintiffs state: "The *Abuan* court also found significant a case that closely parallels the circumstances of the parties in this action . . ." Pl. Opp. Br. at 3. Plaintiffs then gives a lengthy quote from the Abuan case. Pl. Opp. Br. at 3. In the quoted statement, the Abuan court indicates that its holding is justified by the Ninth Circuit case of Hendrick v. Daiko Shoji Co., Ltd., Osaka, 715 F.2d 1355 (9th Cir. 1983). Abuan v. General Electric Co, 735 F.Supp. at 1487. In other words, the Abuan court and the Plaintiffs are relying on the Ninth Circuit holding in Hendrick v. Diako Shoji. However, it is doubtful whether Hendrick is still good law in the Ninth Circuit. In a case decided after Hendrick, the Ninth Circuit stated that "*Hendrick* is expressly disapproved in *Asahi Metal Indus. Co. v. Superior Court*, 48 U.S. 102 . . . so if that portion of *Asahi* is law, then *Hendrick* is no longer the law in this circuit." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d at 271. Thus, the Ninth Circuit called into question whether Hendrick is still good law after the Supreme Court decision in Asahi.

In Asahi, a motor cycle collided with a tractor in California. It was alleged that the accident was caused by a sudden loss of air pressure and an explosion of the rear tire of the motorcycle. The driver of the motorcycle sued the Taiwanese manufacturer of the tube in the

4.

motorcycle tire. The tire manufacturer cross-claimed against Asahi, the Japanese manufacturer of the valve assembly of the tire. Asahi made the valve assemblies in Japan and shipped them to the Taiwanese tire manufacturer where the valve assemblies are put in tires. It was alleged that approximately 20% of the Taiwanese tires were sold in California. Justice O'Connor announced the opinion of the Court. Her opinion found that the exercise of jurisdiction by the California court over Asahi, the Japanese maker of the valve assembly, violated due process. All the justices agreed that the exercise personal jurisdiction over Asahi offended traditional notions of fair play and substantial justice. However, there was disagreement over part II-A of Justice O'Connor's opinion. Part II-A discussed the stream of commerce concept of personal jurisdiction. Asahi Metal Indus. Co. v. Superior Court of California, 48 U.S. at 105.

Four Justices (Justice O'Connor joined by three others) agreed that a substantial connection between a defendant and the forum state is necessary for a finding of minimum contacts. A finding of minimum contacts must derive from an action purposely directed toward the forum State. The mere placement of a product into the stream of commerce is not such an act. This is so even if placement of the product in the stream of commerce is done with an awareness that the stream will sweep the product into the forum State, unless there is additional conduct indicating an intent to serve the forum State market. Id. at 111-113. (This has been referred to as the "stream of commerce plus" analysis.)

In Asahi, the accident occurred in California and 20% of the tires containing the valve assemblies were sold to consumers in California. Yet Justice O'Connor and the other three Justices found that Defendant Asahi did not purposefully avail itself of the forum State. In the present case, there is no alleged connection with the forum, except that ships which used asbestos products stopped on Guam. Since there was no personal jurisdiction in the Asahi case,

a fortiori, there would be no personal jurisdiction in the present case. Therefore, there would be no personal jurisdiction over Chesterton under the stream of commerce plus analysis.

Four other justices in <u>Asahi</u> (Justice Brennan joined by three others) agreed that as long as a defendant is aware that the final product is being marketed in the forum State, jurisdiction premised on the placement of a product into the stream of commerce is consistent with due process and no showing of additional conduct is required. *Id.* at 117. (This has been referred to as the "stream of commerce" view, i.e., stream of commerce without the additional "plus" requirement added by Justice O'Connor.) Justice Brennan wrote: "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the product is being marketed in the forum State, the possibility of a law suit there cannot come as a surprise." *Id.*

In the present case, there is no allegation that the any of the asbestos products were being marketed on Guam or that Chesterton was economically benefiting from commercial activities on Guam. Therefore, even under the "stream of commerce" view articulated by Justice Brennan, the minimum contacts requirement is not satisfied in the present case because the product was not brought to Guam by anyone in the marketing chain. Accordingly, under either the plurality opinion of Justice O'Connor or the concurring opinion of Justice Brennan, there would be no jurisdiction on Guam over Chesterton because the defendants were not participating in a process that resulted in the marketing of asbestos products on Guam.

After the <u>Asahi</u> case, the Ninth Circuit abandoned its decision in <u>Hendrick</u>. In <u>Omeluk</u>, the Ninth Circuit stated that the holding in <u>Asahi</u> expressly disapproves their prior holding in <u>Hendrick</u>. <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d at 217.

In Hendrick, a longshoreman brought an action against a Japanese manufacturer (Daiko). Daiko made a defective wire-rope splice that was used to secure a ship boom. The longshoreman sustained injuries when the splice gave way, allowing the boom to sweep out of control and hit him. Since the accident occurred in an Oregon port, the action was brought in Oregon. Many of the splices manufactured by Daiko were for ocean going vessels. The court stated that the defective splice "caused injury to Hendrick in a port that was within the expected service area of Daiko's customers." The court allowed personal jurisdiction over Daiko in Oregon.

Plaintiff relies on the Hendrick decision as a case that parallels the circumstances of the present action. Pl. Opp. Br. at 3. However, Hendrick is distinguishable from the present case. The alleged disease causing injury to Plaintiffs in the present case developed over a period of 26 years. The ships on which the Plaintiffs worked only visited Guam's port. There is no allegation that Guam was the home port of the ships. Therefore, unlike the Hendrick case, it cannot be said that a specific incident causing the Plaintiffs' injuries occurred on Guam. Hence, the present case can be distinguished from the Hendrick case.

Additionally, Hendrick has been disapproved. Hendrick was decided in 1983. In 1987, the Supreme Court decided Asahi. In 1995, the Ninth Circuit, in its Omeluk decision, stated that their Hendrick decision is disapproved by Asahi. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d at 217.

In Omeluk, a seaman on a fishing vessel was injured when a gate to the deck for storing fishing nets gave way. The accident occurred in international waters off Alaska. The plaintiff sued the Norwegian company that rebuilt the fishing vessel. The Norwegian company refurbished the vessel in Norway. The Norwegian company was aware that some of the vessels

7.

it worked on might be used in the United States. Some time during the rebuilding process, the Norwegian company became aware that the owner of vessel on which the accident occurred intended to use Seattle as the boat's home port. At least 90% of the electronics installations on the vessel was preformed in Norway, but up to 10 % was done in Seattle. The suit was brought in Washington.

Looking at the first two prongs of the three-part test (i.e., (1) that the defendant must purposefully availing itself of the forum and (2) that the claim must arise out of or result from forum related activities), the Ninth Circuit found that the Norwegian company did not purposefully avail itself of the privilege of conducting activities in the forum State. And the Court also found that since the accident did not occur in Washington, the claim did not arise out of or result from forum-related activities because the injured seaman would have suffered the same injury even if none of the contacts with Washington had taken place.

In the present case, although Plaintiffs allege that the ships on which they worked came to Guam, they do not allege that Guam was the home port for the ships. In <u>Omeluk</u>, the home port of the vessel was Seattle and during the refurbishing process, the Norwegian company became aware that the vessel owner intended to make Seattle the home port for the boat. The contact with Guam in the present case was, therefore, less then the Norwegian company's contacts with Washington in the <u>Omeluk</u> case. Since the Ninth Circuit denied jurisdiction on <u>Omeluk</u>, denial of jurisdiction is appropriate in the case now before the Court.

In addition to the logic of the <u>Asahi</u> and <u>Omeluk</u> cases demonstrating lack of personal jurisdiction over Chesterton, under the reasoning in <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980), the allegation that Plaintiffs worked on Navy ships that stopped on Guam is not sufficient to meet the requirement that a defendant must purposefully establish minimum

8.

contacts in the forum State. In <u>Asahi</u>, Justice O'Connor commented on the <u>World-Wide Volkswagen</u> decision. In doing so, she commented on a consumer's unilateral act of bringing a defendant's product into the forum state.

> Applying the principle that minimum contacts must be based on an act of the defendant, the Court in *World-Wide Volkswagen Corp v. Woodson*, . . . rejected the assertion that a consumer's unilateral act of bringing the defendant's product into the forum State was a sufficient constitutional basis for personal jurisdiction over the defendant. It had been argued in *World-Wide Volkswagen* that because an automobile retailer and its wholesale distributor sold a product mobile by design and purpose, they could foresee being haled into court in the distant States into which their customer might drive. The Court rejected this concept of foreseeability as an insufficient basis for jurisdiction under the Due Process Clause.

<u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. at 109. Hence, alleging the presence of a vehicle (or other mode of conveyance such as a ship or airplane) in a forum does not establish personal jurisdiction over the maker of the vehicle or the maker of a component of the vehicle. This would be especially true when no particular incident causing injury occurred in the forum.

In the present case, the alleged asbestos products were not brought to Guam through the stream of commerce. The asbestos products were no purchased on Guam, sold on Guam or delivered to Guam through a commercial transaction. A consumer, the Navy, brought ships to Guam which allegedly used asbestos products. The Defendants had nothing to do with asbestos products being present on Guam. Consequently, the Plaintiffs have not shown that the defendants purposefully established any contacts with Guam.

Allowing limited personal jurisdiction in this case, stretches the concepts of due process and minimum contacts beyond a reasonable limit. Certainly, Chesterton did not purposefully avail itself of Guam in any commercial way. And the Plaintiffs' claims of asbestos exposure did not arise out of or result from forum related activities by Chesterton. Chesterton, therefore, asks the Court to dismiss this case for lack of personal jurisdiction over it in the District Court of

9.

Guam.

## II. VENUE

In their opposition brief, Plaintiffs state that Defendants must establish the inconvenience and hardship they will experience if the case were heard at the Plaintiffs' chosen forum. Pl. Opp. Br. at 4. Chesterton's motion is based on Plaintiffs' failure to meet the statutory requirements for venue on Guam, not upon the issue of the convenience of Guam as a venue. Plaintiffs allege that "a substantial part of the events giving rise to the claims occurred on Guam." *Id.* at 5. Hence, the basis for venue is 28 USCA § 1391(a)(2). Under 28 USCA § 1391(a), a civil action based on diversity of citizenship may "be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving raise to the claim occurred . . .." (emphasis added). Therefore, if a substantial part of the events giving rise to Plaintiffs' claims did not occur on Guam, the action may not be brought on Guam. Chesterton has argued in its opening brief that a ship stopping at Guam does not establish that a substantial part of the Plaintiffs' alleged exposure to asbestos took place on Guam. Since this the motion is based on the statutory requirement for venue and not upon the convenience of the venue, Plaintiffs' convenience argument is not relevant to the motion.

In their opposition brief, Plaintiffs state: "At this very incipient stage of the proceedings, the motion to change venue should be deferred pending discovery." Pl. Opp. Br. at 5. In order to establish venue, Plaintiffs allege that "a substantial part of the events giving rise to the claims occurred on Guam." Hence, venue is based on "events" occurring on Guam. Plaintiffs have not stated what events occurring on Guam they expect to learn of through discovery. The alleged exposure to asbestos occurred while Plaintiffs were working on Navy ships. Plaintiffs' would have been aware of their own presence on ships stopping at Guam before they filed their verified

complaint. It is difficult to understand why discovery would assist in determining what events occurred on Guam. Since Plaintiffs have not stated how additional discover would assist them, Chesterton asks the Court to deny their request to defer a decision on the motion to dismiss for improper venue.

DATED: Hagåtña, Guam, January 10, 2006.

CARLSMITH BALL LLP

_____
J. PATRICK MASON
Attorneys for Defendant
A.W. Chesterton Company

## DECLARATION OF SERVICE

I, J. PATRICK MASON, hereby declare and state:

1. I am a United States citizen over the age of 18 years;

2. I am an Attorney of the law firm of Carlsmith Ball LLP.

3. On January 10, 2006, I will cause to be served a filed copy of DEFENDANT A.W. CHESTERTON COMPANY'S NOTICE OF TAG-ALONG ACTION by hand delivery to the following:

Ignacio C. Aguigui, Esq.
Benjamin B. Cassiday, III
Lujan, Unpingco, Aguigui & Perez, LLP
Suite 300, PDN Building
238 Archbishop Flores Street
Hagåtña, Guam 96910

Thomas C. Sterling, Esq.
Klemm Blair Sterling & Johnson, P.C.
Suite 1008, Pacific News Building
238 Archbishop Flores Street
Hagåtña, Guam 96910

David W. Dooley, Esq.
Dooley Roberts & Fowler, LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913

Anita P. Arriola, Esq.
Arriola, Cowan & Arriola
Suite 201, C&A Professional Building
259 Martyr Street
Hagåtña, Guam 96910

Louie J. Yanza, Esq.
Maher Yanza Flynn Timblin, LLP
115 Hessler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910

4. On January 10, 2006, I will also cause a copy of said documents to be served on the following by depositing same with the United States mail in sealed envelopes, postage prepaid, addressed as follows:

Laurie K. Anger, Esq.
John J. Petry, Esq.
Bruce A. Wagman, Esq.
Morgenstein and Jubelirer LLP
One Market Plaza,
Spear Street Tower, 32nd Floor
San Francisco, California 94105

A.P. Green Industries, Inc.
c/o CT Corporation System
120 South Central Avenue
Clayton, MO 63105

Armstrong World Industries, Inc.
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Dow Chemical Company
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Honeywell International, Inc.
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

A.P. Green Services, Inc.
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Asbestos Claims Management Corporation
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Dresser Industries, Inc.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

GAF Corporation
c/o Prentice-Hall Corporation Systems, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Foster Wheeler Corporation
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

Pittsburgh Corning Corporation
800 Presque Isle Drive
Pittsburgh, PA 15239

Babcock & Wilcox Company
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Flexitallic, Inc.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, California 90017

Kaiser Gypsum Company, Inc.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, California 90017

Amchem Products, Inc.
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Combustion Engineering, Inc.
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Flintkote Company
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Harbison-Walker Refractories Co.
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Owens Corning
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

Quigley Company, Inc.
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

United States Gypsum Company
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801

DATED: Hagåtña, Guam, January 10, 2006.

_____
J.PATRICK MASON